**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

MOHAMED ELJARAOUY,
Petitioner,
v.
JEREMY CASEY, Warden, Imperial Regional Detention Facility,
Respondent.

Case No.: 3:26-cv-01449-BTM-AHG

**ORDER DENYING MOTION TO ENFORCE JUDGMENT**

**[ECF NO. 13]**

On April 8, 2026, the Court conditionally granted Mohamed Eljaraouy's petition for the writ of habeas corpus. (ECF No. 10.) The Court ordered the Government to release Eljaraouy from custody or provide him with an individualized bond hearing within twenty-one days of the order. A bond hearing was held for Eljaraouy on April 27, 2026. (ECF No. 13 ("Mot. Enforce"), at 2.) The immigration judge ("IJ") determined that Eljaraouy was a flight risk and denied bond. (*Id.*) On May 8, 2026, Eljaraouy moved this Court to enforce its judgment. (*Id.*) He argues that his bond hearing was "fundamentally unfair and violated his due process rights" because the IJ improperly weighed his language abilities and neglected to weigh the sponsorship of an asylum shelter. (*Id.*)

Under *Martinez v. Clark*, the Court reviews the IJ's decision for abuse of discretion.

124 F.4th 775, 784 (9th Cir. 2024). A court abuses its discretion "when it applies the wrong legal standard or when its findings of fact or its application of law to fact are 'illogical, implausible, or without support in inferences that may be drawn from the record.'" *United States v. Chichande*, 113 F.4th 913, 919–20 (9th Cir. 2024) (quoting *Glick v. Edwards*, 803 F.3d 505, 508 (9th Cir. 2015)). Put another way, the Court must be "left with a definite and firm conviction" that the IJ "committed a clear error of judgment" to find abuse of discretion. *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009)).

The Court does not find that the IJ used the wrong legal standard. At the outset of the hearing, the IJ stated that the "government bears the burden in this case." (Mot. Enforce, Ex. A, 1.) The IJ later restated that "the government bears the burden of establishing by clear and convincing evidence that the respondent is a risk of flight or a danger to the community." (*Id.* at 8.) This was the standard set by the Court in its conditional grant of Eljaraouy's habeas petition.

The Court looks to the IJ's factual findings and application of those facts to the legal standard. To determine if a noncitizen is eligible for bond, an IJ weighs the *Guerra* factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Here, the IJ did not find that Eljaraouy was a danger. Addressing only risk of flight, he found that Eljaraouy has no family or community ties in the country, no ties to the United States itself, and no employment history because he had been in immigration detention since arrival. (*Id.* at 8.) He found that Eljaraouy entered the country illegally. Lastly, he

found that Eljaraouy was unable to communicate fluently in any language aside from "a very specific subset of Tarifit that is only spoken in his one particular village in Morocco." (*Id.*) Based on these factors, the IJ found Eljaraouy to be a flight risk.

The IJ's determination was not an abuse of discretion. Each finding was drawn from the record and connected to the *Guerra* factors. Eljaraouy responds that a "noncitizen's language abilities" is not on the factors and so was improperly considered. (Mot. Enforce, 2.) The IJ did not, however, consider Eljaraouy's language abilities as an independent factor. During the hearing, the IJ, Eljaraouy's counsel, and the interpreter attempted to speak with Eljaraouy in "numerous different languages," including the Tarifit language that Eljaraouy initially claimed to speak. (Mot. Enforce, Ex. A, 8, 2–7.) Eljaraouy denied that he was familiar with any of these languages. The IJ found that Eljaraouy's inability to communicate "with anybody in the community" would hinder him from communicating with sponsors or transporting himself in the community. (*Id.* at 8.) This, along with Eljaraouy's lack of personal ties, would affect Eljaraouy's ability to function outside detention, such as attending court hearings.

Eljaraouy also claims that the sponsor organization Casa Marianella would provide him with case management and transportation for court hearings and English lessons to broaden his communication abilities. (*Id.* at 4–5.) This evidence should have been weighed more by the IJ. But the transcript of the hearing shows that the IJ and the parties tried in good faith to communicate with Eljaraouy. Based on the repeated failures to adequately do so, the IJ found that Eljaraouy would struggle to communicate with others, including sponsors. This determination was not "illogical, implausible, or without support" in the record. Thus, the IJ did not clearly err by finding that Eljaraouy was a flight risk.

//

//

//

//

//

The Court is not left with a definite and firm conviction that the IJ "committed a clear error of judgment" in this hearing. *Ressam*, 679 F.3d at 1086 (citation omitted). Accordingly, the Court cannot find that the IJ abused his discretion when he denied Eljaraouy bond. The motion to enforce judgment is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: July 28, 2026

Honorable Barry Ted Moskowitz
United States District Judge